# Francis O'Neill, General Superintendent of Police, etc., v. James W. Fitzsimmons.

### Gen. No. 11,129.

1. CIVIL SERVICE EMPLOYEE—*when, may be discharged.* A civil service employee of the city of Chicago may be discharged by it when such discharge is made in good faith and in the interest and from motives of economy.

Mandamus proceeding. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1903. Reversed. Opinion filed May 17, 1904. Rehearing denied June 3, 1904.

**Statement by the Court.** On and before December 7, 1898, there was existing in the police department of the city of Chicago an office or position known as foreman of the repair shop. On that day appellee duly passed an examination held by the Civil Service Commission of the city touching his qualifications for said position and was duly certified by the commission to the then general superintendent of police of the city of Chicago for appointment to such position. On December 24, 1898, appellee qualified and entered upon the duties of the position and continued to fill the same and discharge all the duties thereof until March 19, 1902, when he received from appellant the following notice:

" CITY OF CHICAGO,
Department of Police.
Francis O'Neill, General Superintendent of Police.
MARCH 19, 1902.
General Order No. 18:
John Carr, James F. Christian and James W. Fitzsimmons, Foremen Repair Shop, and Patrick Malone, Assistant Plumber, are hereby dropped from the rolls, no appropriation having been made by the City Council for their salaries for the current year.
This order to take effect at 7 o'clock this P. M.
FRANCIS O'NEILL,
General Supt. Police."

Appellee immediately protested to the superintendent of police claiming that said order of dismissal was illegal and offered his services for the performance of the duties of said position, which the superintendent refused.    Afterwards appellee filed his petition in the Circuit Court of Cook County, praying for a writ of mandamus to be issued to appellant and commanding him to restore appellee to the position held by him prior to March 19, 1902.    The petition sets up the foregoing facts, also the duties of appellee as foreman of the repair shop, and alleges that in the annual appropriation for the year 1902 the common council of the city of Chicago at the request of appellant, failed to make an appropriation for the salary of appellee; that appellant's action in making such request and the compliance of said council with the same was had and taken for the sole purpose of dismissing and removing appellee from his said position and circumventing and evading the Civil Service Act.    The petition further alleges that the duties of said position held by appellee have not been abolished; that in truth and in effect they cannot be abolished, as it is essential for the proper management of said repair department that there should be a superintendent of the same and that the duties thereof be performed by some one individual; that from the ninth day of March, 1902, until on or about the first day of April, next following, the duties of appellee's said position were performed in fact, but without warrant of law, by one Patrick J. Reid, and that since the first day of April until the filing of the petition said duties have been and are still performed by one William J. Ray; that neither said Reid nor said Ray has taken the Civil Service examination for said position, and that no one has been certified to for the same by the Civil Service Commission; that Reid is the wagonmaker and Ray a laborer employed in said repair shop; that neither the one nor the other, while performing the duties formerly performed by appellee, performed the duties pertaining to their former positions, but devoted their entire time to the work formerly done by appellee; that all such acts and doings are contrary to the

provisions of the Civil Service Act, to the rules and regulations of the Civil Service Commission and to the rights of appellee.

Appellant's answer admits among other things that he at the times mentioned in the petition was superintendent of police of said city; that appellee was duly appointed to the position of foreman of the repair shop as alleged in said petition and held said position until on or about March 19, 1902, and that no appropriation for the salary attached to said position was made by the common council of said city for the year 1902, but denies that the failure to make said appropriation was for the purpose of dismissing or removing appellee from said position and circumventing or evading the said Civil Service Act; alleges that this position was unnecessary and a useless expense to said city and for that reason alone said common council failed to make an appropriation therefor.

To said answer appellee filed a traverse wherein, among other things, he denies that said position formerly held by him was unnecessary and a useless expense to said city and averred on the contrary that the same was absolutely necessary and that without it the business of said repair shop could not be properly carried on.

Upon trial by the court without a jury the issues were found for appellee and a peremptory writ of mandamus ordered to issue commanding appellant forthwith to reinstate appellee in his position as foreman of said repair shop.

CHARLES M. WALKER, Corporation Counsel, COLIN C. H. FYFFE and WELLS M. COOKE, Assistants Corporation Counsel, for appellant.

EDMUND S. CUMMINGS, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

In City of Chicago v. The People ex rel. Byrne (*ante*, p. 145,) we hold that the Civil Service Act was not intended to deprive a municipality of the power to abolish an office or position, if the power be exercised reasonably and in

O'Neill v. Fitzsimmons.

good faith and that the person who had been holding the abolished office or position was not entitled to a hearing under the clause of the act which prohibits a removal except upon written charges and a hearing thereon. The reasoning in that case leads to the same conclusion where an employee of a municipality is discharged from his position in good faith in the interest and from motives of economy. Such has been the uniform ruling of the courts of New York under a law similar to ours. People ex rel. Corrigan v. The Mayor, 149 N. Y. 215; Phillips v. Mayor, 88 N. Y. 245; Langdon v. Mayor, 92 N. Y. 428; Lethbridge v. Mayor, 133 N. Y. 232; McNamara v. Mayor, 152 N. Y. 228. Counsel for appellee does not dispute the proposition that an employee may be discharged for lack of funds, but contends that appellee was not discharged in good faith.

There is little if any conflict in the proof. Appellant, as chief of police of the city of Chicago, was notified by its comptroller " that there was just so much money available," that he " would have to exercise economy," that the appropriation requested by him was too large and could not possibly be made by the city council, that he would have to modify his original estimates, and to exercise his judgment where economy could be practiced with the least detriment to the service. Acting upon the suggestions of the comptroller and believing that the superintendent of construction could successfully fill appellee's position in addition to his other duties, appellant did not ask for an appropriation to pay appellee, and no appropriation was made. Appellee as foreman of the repair shop had under him twentyone men, to wit, three blacksmiths, three helpers, three woodworkers, two carpenters, three harness makers, four painters and three laborers. During the first one or two weeks after appellee's discharge Reid, one of the men under him, took his place, and from that time until the trial (not quite ten months) William J. Ray, one of the four painters, acted as foreman and performed the same duties that appellee had formerly, and did nothing else. No additional men were employed in the shop after appellee's

discharge.   He had been paid for his services $100 a month, and Ray $52.50 a month.   Ray's pay remained the same after taking appellee's place.   There was thus a clear saving of $100 a month.

Upon the foregoing facts and in view of appellee's admission that he did not charge appellant with "moral turpitude," we are of opinion that the latter in discharging the former for want of an appropriation was acting in good faith and from motives of economy, and was not seeking to circumvent or evade the provisions of the Civil Service Act. True, there were nine men in the repair shop who were not appropriated for, eight of whom remained in the service notwithstanding.   But appellant explains this by his testimony that where a position (like appellee's) was filled by one man only, and no appropriation was made, the one man was discharged; but where there was a group of men filling the same position and only part of them were appropriated for, appellant kept them all at work on what he called "the vacation principle," that is to say, an order for enforced vacation.   The fact that some three months after appellee's dismissal appellant received from the city authorities a considerable sum of money and paid the men for the lost time does not shed any light on what his motives were at the time he notified appellee and two others in the same situation that they were "dropped from the rolls."   Appellant testifies that he did not in one single instance depart from the rule whereby he discriminated between a position held by one man only and a position held by several; and there is no proof to the contrary.   There is also a total lack of proof tending to show any animus or feeling of dislike or hostility on the part of appellant toward appellee.

As held in City of Chicago v. The People, *supra*, the alleged violations of the Civil Service law in taking Ray from his work as a painter and giving him the position of foreman are matters in which appellee may be interested as a citizen, but not as petitioner in a mandamus proceeding.   If the city or any of its officers have been violating the law in this respect, appellee is not the proper party to

raise the question, nor is this the proper proceeding to consider it.

It may be (although we do not so decide) that under the operation of the Civil Service law and the rules of the commission appointed in pursuance thereof appellee will be entitled to be restored to his position when a new appropriation is made therefor.

The order of mandamus will be reversed with a finding of facts.

*Reversed.*