## City of Chicago et al v. People, ex rel. James McCarthy.

### Gen. No. 13,303.

CIVIL SERVICE ACT—*power of city to lay off employe.* The power of a city to abolish a position and discharge a civil service employe who has filled such position, when done in good faith and in the interest of and from motives of economy, includes the power to lay off a civil service employe when done in like good faith and with the same purpose and motive.

*Mandamus.* Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of facts. Opinion filed October 4, 1907.

MICHAEL F. SULLIVAN, for appellants; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

RUDOLPH H. WOLLNER, for appellee; EDWARD J. NOVAK and SIDNEY S. POLLACK, of counsel.

City of Chicago v. People.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the respondent, the city of Chicago, Blocki, commissioner of public works, and Dougherty, superintendent of streets of said city, from a judgment of the Circuit Court directing that a writ of *mandamus* issue commanding said respondents forthwith to re-employ and reinstate petitioner McCarthy to the position of timekeeper in the bureau of streets of said city, and to compensate him for the performance of the duties of such position. The pleadings consist of the petition and answer and amended answer of the respondents and a chancery replication. The petition avers that petitioner passed a civil service examination for the position of timekeeper in 1898; was placed upon the eligible list and May 11, 1900, was assigned to duty in the bureau of streets of the department of public works, and held such position up to August 16, 1901; that an appropriation was made by said city for the payment of his salary; that August 16, 1901, he was informed by his ward superintendent "that his services were no longer needed and did thereupon discharge your petitioner"; that his duties were thereafter performed by persons not qualified to fill such position under the Civil Service Act; that at the time petitioner was so discharged there was no lack of work, or lack of funds with which to pay him, and there was no necessary cause for his discharge or the reduction of the force. Then follow allegations that he was discharged without trial by the Civil Service Commission; allegations as to the nature of his duties, and allegations of numerous demands for reinstatement and the payment of his salary.

The amended answer admits the allegation of the petition that petitioner passed a civil service examination and was assigned to duty; avers that the city of Chicago, for the reason that there was no appropriation with which to pay the salary of petitioner as timekeeper, for the purpose of economy and for the reason that said position filled by petitioner was no longer necessary and for the purpose of saving the cost and expense thereof, abolished said position held by peti-

tioner and solely for the reasons aforesaid laid off and discharged said petitioner from the duties thereof; that such of the acts and employment of petitioner as were necessary to be performed, were thereafter added to the duties of the ward superintendent without additional expense to the city; that he is now performing the same and no other person has been appointed or assigned to said position. The amended answer sets out, and the respondents put in evidence at the trial, the ordinance relating to the department of public works; the appropriation ordinance for the year 1901, and the following rule of the Civil Service Commission:

"Whenever, for lack of work or lack of funds or other necessary cause, it becomes necessary in any bureau to reduce the force in any employment within the classified service, the person last certified for such employment to such bureau from an eligible register shall be laid off first. When it is desired to increase the force in any bureau or department for any employment within the classified service, all eligibles then remaining upon an eligible register for such employment, and who are entitled to reinstatement at the time such increase is made, shall be reinstated in the order of their original certification, regardless of the fact that such original certification may have been to another bureau or department than that in which the increase is made."

The appropriation ordinance for the year 1901 appropriates specific sums for the payment of officers and employees in the bureau of streets, not including timekeepers. It also appropriates for each ward a specific sum for garbage, street and alley cleaning, street and sidewalk repairs. It was out of this latter appropriation that the timekeeper in each ward was paid in 1901 up to August 16th. The petition was filed February 11, 1903. There is in the record neither averment nor evidence as to the provision of the appropriation ordinance for 1903.

The evidence shows that up to August 16, 1901, a timekeeper was employed in the bureau of streets for each of the thirty-five wards of the city; that on that day they were all

laid off by order of the superintendent of streets; that the ward superintendents were thereafter required to do, and with two exceptions have since that time done the work theretofore done by the timekeeper; that the ward superintendents are civil service men and their salaries have not been increased by reason of their additional duties.

Chicago v. The People *ex rel.,* 114 Ill. App., 145, was a *mandamus* to compel the reinstatement of the relators to their positions as timekeepers in the water pipe extension division of the city of Chicago. The contention in that case of the respondents was the same as in this—that the relators were laid off in good faith in the interest and from motives of economy. In that case we held that the Civil Service Act was not intended to deprive the city of the power to abolish an office or position; that when an office or position filled by a civil service employee was in good faith abolished for purpose of economy, such employee might be discharged without a hearing by the Civil Service Commission, and could not complain of any arrangement made by the city for the performance by others in the classified service of the duties of such abolished position.

In O'Neil, Supt., v. Fitzsimmons, 114 Ill. App., 168, the same questions were involved and the same conclusion reached by us. Upon a further appeal to the Supreme Court the judgment of this court was affirmed. Fitzsimmons v. O'Neil, 214 Ill, 494. In that case the Supreme Court held that section 12 of the Civil Service Act, providing that no employee in the classified civil service shall be removed except for cause, upon written charges, etc., does not apply to removal from office consequent upon the abolishment of the office itself in good faith and in the interest of economy.

In this case it does not appear how the office of timekeeper in the bureau of streets was created. Such timekeepers were paid, as has been said, out of the sums appropriated for each ward for cleaning streets, removal of garbage, etc. It appears from the testimony of the employees of the Civil Service Commission that when a man has

passed an examination, been certified to the city for employment and put to work by the city, he cannot be taken off the list, but in case he is laid off he remains on the list, subject to reinstatement in the bureau or department where he was at work when laid off, in the manner provided by the rule of the Civil Service Commission above set forth. This rule it was said in Fitzsimmons v. O'Neil, *supra,* page 508, "recognizes the existence of a power in any one of the bureaus connected with the city government, to reduce the force in any employment within the classified service for lack of work, or lack of funds."

It is clear, we think, that the power of the city to abolish a position and discharge a civil service employee who has filled such position, when done in good faith and in the interest and from motives of economy, includes the power to lay off a civil service employee when done in like good faith and with the same purpose and motive.

We think the evidence shows that in this case petitioner and all the other timekeepers in the bureau of streets were laid off August 16, 1901, for lack of work and of funds, in the interest of economy and retrenchment, in good faith, and not for the purpose of evading the Civil Service Act.

All of the timekeepers in the bureau of streets were laid off at the same time, and the question of the order in which such timekeepers should have been laid off is not presented.

It appears from the evidence that since August 16, 1901, only two timekeepers have at any time been employed by the bureau of streets: Noonan in the first ward and Miss Murphy at times in the twenty-second and at times in the twenty-fourth ward, and that they were so employed because of the vast amount of work in these wards. It further appears that Miss Murphy and Noonan were certified for employment from the eligible register of the Civil Service Commission before petitioner was so certified, and therefore under the rule above set forth were entitled to be reinstated before petitioner.

We do not think it material whether Miss Murphy and Noonan were the proper persons to be first reinstated.

There is no claim that appellee was the first in the order of certification and therefore, under the rule, entitled to be the first reinstated. His contention is that the city had no right, upon the facts disclosed in the record, to lay him off, and this contention cannot, in our opinion, be sustained.

The judgment of the Circuit Court will be reversed with a finding of facts.  .

*Reversed.*